Orwin H. HAGEN, d.b.a. Uptown Standard Station and Milwaukee Mutual Insurance Company, Relators,

v.

Todd A. VENEM, Respondents.

Gene D. HIRT, Respondent,

v.

CITY OF MINNEAPOLIS, self-insured, Relator.

Nos. C7–84–215, C6–84–366.

Supreme Court of Minnesota.

April 19, 1985.

Roger A. Jensen, St. Paul, for Hagen, et al. Uptown Standard Station and Milwaukee Mut. Ins. Co.

Robert J. Alfton, Minneapolis, City Atty., Minneapolis, for City of Minneapolis.

Robert J. King, Sr., Minneapolis, for Venem.

Gerald J. Seibel, Minneapolis, for Hirt.

**WAHL, Justice.**

Employer-relators in these two cases sought review by certiorari of decisions of the Workers' Compensation Court of Appeals construing provisions of Minn.Stat. § 176.061, subd. 6 (1984). For the reasons set forth below, we affirm except insofar as an agreement of the parties affects future credit in the Hirt case.

The cases require us to determine for the first time the proper valuation of structured settlements entered into between an injured employee and a third-party tortfeasor for the purposes of calculating the amount of an employer's reimbursement and future credits under Minn.Stat. § 176.-061, subd. 6 (1984) of the Workers' Compensation Act. This provision of the Act governs an employer's claim for reimbursement for benefits already paid and future credit against benefits payable, when an employee makes a successful claim against a third-party tortfeasor for his or her injuries. The amount of such reimbursement and credit is based on the amount of the "total proceeds received by the employee" from the claim.[1]

---

1. The method of calculating an employer's reimbursement and future credit is as follows:

The *proceeds* of all actions for damages or of a settlement of an action under this section, except for damages received under subdivision 5, clause (b) received by the injured employee or the employee's dependents or by the employer or the special compensation fund, as provided by subdivision 5, shall be divided as follows:

(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then

(b) One-third of the remainder shall in any event be paid to the injured employee or the employee's dependents, without being subject to any right of subrogation.

(c) Out of the balance remaining, the employer or the special compensation fund shall be reimbursed in an amount equal to all benefits paid under this chapter to or on behalf of the employee or the employee's dependents by the employer or special compensation fund,

The employer-relators in these cases challenge the determination of the Workers' Compensation Court of Appeals that the term "proceeds," for the purposes of section 176.061, subd. 6, should be construed to require present value discounting of the amount to be paid out under the terms of a structured settlement. The employer in *Venem* also challenges the application of a 10% discount rate if the present value is used and questions the jurisdiction of the Workers' Compensation Court of Appeals (W.C.C.A.) to make such a valuation in the first place.

Todd Venem, in *Venem v. Hagen,* suffered permanent partial disability from an injury to the lower portion of both of his legs when he was struck by an automobile he was guiding into his employer's car wash. His employer and employer's insurer accepted liability on Venem's workers' compensation claim, and reached a settlement with Venem to pay him $19,106 in benefits. Venem also pursued a third-party action for damages against the driver who injured him. He entered into structured settlement with the driver's insurer to satisfy his claim. Venem was 21 years old when the settlement was reached. The agreement provided for an initial cash payment of $49,000. When Venem reaches age 45, monthly payments of $2,210 will commence, to continue for 25 years.

The Workers' Compensation Division calculated that Venem would receive a total of $712,000 over the life of the agreement, and used this amount as the computational basis for determining his employer's reimbursement and credit under section 176.061, subd. 6. The Division's calculations yielded an immediate reimbursement to the employer of 96.24% of the benefits already

paid, or $18,387.48, a future credit of $455,560.81, and a charge of 3.76% of the costs and legal fees for collection of the settlement, or $718.60. Under the Division's calculations, Venem would receive no more than $3,833.81 of his initial $49,000 payment. He will wait 23 years to begin receiving the remainder of his settlement.

The W.C.C.A. concluded that the Division's calculations were not in accord with the evidence and the law and held that the present value of the structured settlement constitutes the "proceeds received" by the employee to be used in determining the employer's reimbursement and future credit. The W.C.C.A.'s calculations, based on a 10% discount rate, produced $77,020 as the present value of the settlement, with the employer receiving reimbursement for benefits paid of $12,462.90, a future credit of $32,241.01, and a charge of 34.77% of the costs of collection, or $6,649.92. The employee would receive nearly $10,000 immediately.

Gene Hirt, in *City of Minneapolis v. Hirt,* was a captain in the Minneapolis Fire Department, when he was seriously injured in a work-related accident, by shrapnel in his head from an explosion at 1200 On The Main. Hirt and his wife and guardian Joan Hirt entered into a structured settlement agreement with the third party tortfeasors and their insurers, and Hirt's employer, third party defendant, City of Minneapolis. Under the terms of the structured settlement, Gene Hirt and Joan Hirt would each receive $300,000 immediately. Gene Hirt or his heirs would also receive $2,640 a month for at least 240 months, and, if he lives longer, for the rest of his life. In addition, four periodic lump sum payments totalling $750,000 would be made to Gene

less the product of the costs deducted under clause (a) divided by the *total proceeds received by the employee* or his dependents from the other party multiplied by all benefits paid by the employer or the special compensation fund to the employee or the employee's dependents.

(d) Any balance remaining shall be paid to the employee or the employee's dependents, and shall be a credit to the employer or the special compensation fund for any benefits

which the employer or the special compensation fund is obligated to pay, but has not paid, and for any benefits that the employer or the special compensation fund is obligated to make in the future.

There shall be no reimbursement or credit to the employer or to the special compensation fund for interest or penalties.

Minn.Stat. § 176.061, subd. 6 (1984) (emphasis added).

Hirt or his heirs. The settlement contains a provision that the city's agents would recommend to the city council that any claim for reimbursement of the $274,000 already paid in benefits be waived by the city. The city and the Hirts also agreed that Gene Hirt's "total settlement" would be submitted to the Workers' Compensation Division for computation of future credit, with such future credit in no event to be less than $400,000. At the same time the Hirts were agreeing to the structured settlement in the tort claim, they were also entering into a stipulation with the City of Minneapolis for the settlement of Hirt's compensation claim for 67½% permanent partial disability. Among other terms of settlement, Hirt and the City agreed

5) That employer shall continue to pay employee workers' compensation benefits, as required by law, as long as employee's physical condition shall warrant continued payment of said benefits. *The continued payment of benefits shall be subject to any available offsets or credits stipulated to by the parties* or allowed pursuant to Minn.Stats., Chapter 176 and subject to the terms and conditions of this stipulation. (Emphasis added.)

On June 2, 1983, the Workers' Compensation Division of the Department of Labor and Industry entered an award on the stipulation of settlement, conclusively presuming it to be "reasonable, fair, and in conformity with the Minnesota Workers' Compensation Law."

On July 13, 1983, the Workers' Compensation Division filed its determination of third-party credit with regard to Hirt's tort recovery. The subrogation supervisor of the Compensation Division calculated the city's future credit to be $1,091,747.58 based on the total payout of $1,683,600.00 guaranteed by the settlement. On appeal, the W.C.C.A., in a decision filed February 3, 1984, found such a result inequitable and invalid, and remanded the matter to the Workers' Compensation Division for determination of the city's future credit based on the discounted present value of the structured settlement, consistent with its

decision in *Venem v. Hagen* filed January 3, 1984. The propriety of applying a present value discount to determine the proceeds of the employee's settlement is challenged by the employers in both cases.

## I.

We consider first the jurisdictional issue. The employer in *Venem* contends that the W.C.C.A. lacked authority to devise the "remedy" of discounting to present value of employees' structured settlements. By characterizing the W.C.C.A.'s construction of the term "proceeds" in section 176.061, subd. 6, as a "remedy," the employers seek to remove from the W.C.C.A.'s jurisdiction its authority to reach its results in these cases. We agree that the W.C.C.A. is a tribunal of limited jurisdiction, restricted by statute to the construction and application of the Workers' Compensation Act. Minn.Stat. § 175A.01, subd. 2 (1984), *Cooper v. Younkin,* 339 N.W.2d 552, 554 (Minn.1983). Within the class of cases "arising under" the Act, however, the W.C.C.A.'s powers are plenary. The court may hear and determine "all questions of law and fact" in any such case appealed to them. Minn.Stat. § 175A.01, subd. 2 (1984).

The employers rely on language from *Cooper* as authority for asserting lack of jurisdiction but their reliance is misplaced. Our holding in *Cooper* was that the W.C.C.A. was without jurisdiction to fashion equitable remedies once it had determined that the claim before it was not governed by the terms of the statute. The W.C.C.A. in that case had held that the subrogation provisions of section 176.061 did not apply to certain insurance proceeds but nevertheless remanded the claim back to the Workers' Compensation Division for a determination of a subrogation credit to the employer. In reversing the decision of the W.C.C.A. we stated:

[I]t is apparent that the Workers' Compensation Court of Appeals was attempting to fashion a remedy based on equitable principles. Laudable as that mo-

tive is, the jurisdiction of the Workers' Compensation Court of Appeals is limited to the construction and application of the Workers' Compensation Act. Minn.Stat. § 175A.01, subd. 2 (1982). Having determined that § 176.061, the only provision in the Workers' Compensation Act for employer subrogation or for allocation of sums payable by third parties, did not apply, the Workers' Compensation Court of Appeals was powerless to apply a remedy of its own devising.

*Cooper*, 339 N.W.2d at 554. The rationale in *Cooper* for finding that the W.C.C.A. exceeded its jurisdiction would apply in this case if the court below had determined that the payments received under the structured settlement were not "proceeds" under section 176.061, subd. 6, and had then proceeded to determine employers' reimbursement and future credits. On the contrary, the W.C.C.A. did find such payments to be proceeds within the meaning of the statute and thus, we hold, acted within its authority.

█ The employer also suggests that since the W.C.C.A. considered the relative burdens placed on employees and employers in determining the proper method of computing the value of the settlement, it exceeded its sole duty to construe the statute "as written." The W.C.C.A. did place considerable weight on equitable considerations in reaching its decision. The opinions state that the W.C.C.A. rejected the Workers' Compensation Division's method of distribution as "inequitable and not in accord with Minn.Stat. § 176.061." In so doing, however, the court was properly considering the principle of statutory construction that statutes are to be construed so as to yield reasonable results, consistent with the admonition contained in Minn.Stat. § 176.001 (1984) that the Act is to be construed in a nondiscriminatory manner. Thus, if the W.C.C.A. erred in weighing the equities in construing the statute, it was an error of statutory construction, not of exceeding its jurisdiction.

## II.

The crux of these appeals is the meaning of "proceeds" and "total proceeds received" as used in section 176.061, subd. 6. The employers contend that construction is unnecessary, that the words "proceeds" and "total proceeds received" in subdivision 6 are clear and unambiguous, requiring simply that the employer's third party credit be based on the total amount guaranteed to be paid to the employee under the terms of the stipulated settlement. It is true that no question of ambiguity arose so long as the employee's tort recovery was in a lump sum damages award or cash settlement. When, as here, however, the recovery results from a structured settlement, the meaning of "proceeds" and "total proceeds received" becomes unclear and construction becomes necessary. Three plausible constructions have been advanced. The Workers' Compensation Division determined that the proceeds of the settlement should be deemed the total amount to be paid out to the employee under the terms of the settlement. The W.C.C.A. held that the total proceeds should be construed as the present value of the total payment. Judge Adel suggested that any lump sum received at the time of the settlement should be subject to an initial distribution, with any subsequent payments being divided as provided by the statute only when each payment is actually received.

█ We conclude that the construction given by the W.C.C.A. most nearly effectuates legislative intent and most closely reflects the purposes of section 176.061, subd. 6. The W.C.C.A. interpreted "proceeds" and "total proceeds received by the employee" to be the present value of the structured settlement because at the time each employee agreed to the structured settlement, he received cash and the present value of future payments. If the legislature had intended "proceeds" to mean the total amount guaranteed under the terms of the settlement, as the employers contend, it could have clearly stated "total proceeds received *or to be received*." It did not. Moreover, the present value of

the settlement reflects the amount of money the third party tortfeasor would have to pay the employee immediately for the amount ultimately paid out under the settlement to accrue under an annuity plan. The tortfeasor, in effect, acts as the investor of the employee's damages recovery, which is the discounted value of the settlement. While section 176.06, subd. 6, creates a limited subrogation right in the employer against the third party tortfeasor, the employer would have no subrogation rights, as employees note, against the return on the employee's own investment of a lump sum recovery which, in effect, would be the result if the employer's reimbursement and credit were based on the total pay out.

It is clear that to permit the employer to claim the total pay out as the basis of its subrogation claim would place the employer on a more advantageous footing than the employee, contrary to ordinary subrogation principles and the intent of the legislature that the Act be construed in a non-discriminatory manner. Under the total pay out approach, the employer would accrue at the outset credit against future benefits far in excess of the amount the employee has received under the settlement and would also be reimbursed out of the employee's initial cash payment for a relatively large percentage of compensation already paid. The employee thereafter needing medical care could be barred from receiving compensation from the employer and yet have no resources to pay the costs of that care. In Venem's case, Venem would receive $3,800 of his initial payment, and nothing more for 23 years, while his employer would receive an immediate credit of over $455,000. The employer is insulated from paying future benefits to that amount while Venem has only $3,800 in hand to cover his expenses. The legislature could not have intended the credit provision to deprive employees of resources to meet the expenses of their work-related injuries to an extent greater than necessary.

The employees argue further that the "total pay out" construction of proceeds results in a distorted measure of the employer's liability for the costs of collection of the proceeds of the third-party action. We have interpreted the provisions of § 176.061, subd. 6, requiring employer contribution to cost of collection as affirming the equitable maxim that when a holder of a subrogation right accepts the benefits of litigation, he or she should be subject to a proportionate share of expenses. *See Cronen v. Wegdahl Cooperative Elevator Ass'n.*, 278 N.W.2d 102 (Minn.1979). Construing proceeds as the total pay out results in the assessment of minimal employer contribution to costs. In *Venem*, for example, the employer's collection costs were calculated under total pay out at 3.7% of the total collection costs, or $718.60. Such a small rate of contribution is disproportionate to the benefit received by the employer and unfairly reduces the recovery of the employee.

A third method of calculating total proceeds under § 176.061, subd. 6, was suggested by Workers' Compensation Judge Adel's dissent below. He recommended that the employer's reimbursement and future credit be recalculated each time the employee actually receives cash in hand over the duration of the payment period. This approach has the virtue of reflecting the employee's actual financial benefits accrued over the term of the settlement, and was adopted by this court in determining a client's obligation to pay his lawyer under a contingent fee contract when the client's claim was settled under a structured settlement. *Cardenas v. Ramsey County*, 322 N.W.2d 191, 193 (Minn.1982), 31 A.L.R. 4th 89. While this method may be appropriate in effecting the terms of a private contract, in this context we believe that the administrative burden that would be imposed on the Workers' Compensation Division by requiring them to recalculate an employer's interest in a settlement each time a payment is received militates against this construction. *Cf. National Family Insurance Co. v. Muellerleile*, 308 Minn. 340, 242 N.W.2d 598 (1976) (statutes to be construed to result in practicable, coherent

administration). This method also has the disadvantage of giving the employer subrogation rights against, what is, in effect, the return on the employee's investment.

Construing the term "proceeds received" as the present value of structured settlements comports with the underlying policies of the Act. Discounting structured settlements to present value for the purposes of section 176.061, subd. 6, encourages employees to enter into such settlements with third-party tortfeasors, consistent with the legislative preference for periodic payments providing employees with stabilized incomes over an extended period of time. *See Senske v. Fairmont & Waseca Canning Co.*, 232 Minn. 350, 360–61, 45 N.W.2d 640, 648 (1951). Such settlements permit third-party defendants to offer plaintiffs large settlements at a relatively small up front cost by spreading payments out over a period of years through an annuity, *see Franck v. Polaris E–Z Go Division of Textron, Inc.*, 157 Cal.App.3d 1107, 204 Cal.Rptr. 321, (1984) benefitting both the employee and the compensation system as a whole. Since such a construction conforms with the express language of the provision, consistent with legislative intent, we therefore hold that the "proceeds" of a structured settlement for purposes of Minn.Stat. § 176.061, subd. 6 (1984) be construed as the discounted present value of such a settlement.

### III.

It remains to be determined at what rate the present value of any structured settlement should be fixed. The employees urge that a 10% discount rate, based on prevailing market conditions as determined by professional actuaries, is the appropriate figure. Counsel for employer Hagen conceded before the W.C.C.A. that a 10% discount rate accurately reflected prevailing economic conditions but argues on this appeal that if we adopt a present value analysis for determining the total proceeds to be distributed under § 176.061, subd. 6, a 5% discount figure should be used. This figure is the discount rate allowed under Minn.Stat. § 176.165 (1984) when periodic compensation benefits are commuted to a lump sum payment. Section 176.165 states that:

> The amounts of compensation payable periodically may be commuted to one or more lump sum payments only by order of the commissioner * * * In making these commutations the lump sum payments shall amount, in the aggregate, to a sum equal to the present value of all future instalments [sic] of the compensation calculated on a five percent basis.

Minn.Stat. § 176.165 (1984). If the legislature, by approving the 5% discount rate for commuted benefits, intended that a 5% discount rate should apply whenever present value discounts are appropriate, the employers' argument has considerable force.

■ The purpose underlying the 5% discount rate in section 176.165, however, does not support its extension to use in discounting a structured settlement to present value. While lump sum payments are generally discouraged as not in the best interests of the employee or the public, they are permitted when an employee can prove to the commissioner extraordinary circumstances of need. *Senske*, 232 Minn. at 360, 45 N.W.2d at 648. Under such circumstances the legislature intends the discount rate determining the size of the lump sum payment to be favorable to the employee. We perceived a similar intent underlying the payment of lump sums, pursuant to Minn.Stat. § 176.101, subd. 3(a) (1984) to employees suffering from permanent partial disabilities. Such lump sum payments are "intended to enhance the value of lost-earning-capacity benefits by giving the employee, rather than the employer or insurer, the immediate use and control over the total amount of benefits otherwise payable in installments." *Umbreit v. Quality Tool, Inc.*, 302 Minn. 376, 379–80, 225 N.W.2d 10, 12–13 (Minn.1975).

Considerations favoring high valuation of lump sum payments attendant on an injured employee's immediate, extraordinary need for financial resources justifying commutation do not appear to us compara-

ble to an employer's interest in maximizing its reimbursement and credit under section 176.061, subd. 6. We ascertain no legislative mandate that the 5% discount rate required under section 176.165 be carried over to establish the present value of a structured settlement.

We therefore hold that the discount rate to be applied in determining the present value of a structured settlement should be that which is proven to reflect current interest rates at the time the settlement is reached. Proof of prevailing interest rates can be submitted to the compensation judge by the parties and their experts. Relators Hagen and Milwaukee Mutual Insurance Company, in the *Venem* action, conceded that a 10% discount rate fairly reflected prevailing market conditions. The W.C.C.A. also found this figure reasonable in light of current market conditions and interest rates, likely to yield an accurate present value figure at this time. We therefore affirm the decision of the W.C.C.A. in *Venem v. Hagen.* We affirm the decision of the W.C.C.A. in *Hirt v. City of Minneapolis* except that in the computations regarding future credit of the employer, the parties are bound by their settlement agreement, incorporated in their stipulation of settlement approved by the Workers Compensation Division, that the future credit of the City of Minneapolis shall be "no less than Four Hundred Thousand ($400,000) Dollars." To permit this agreement to be avoided would inequitably deprive the City of a benefit of the settlement in which both parties concurred.

*Venem v. Hagen* affirmed. *Hirt v. City of Minneapolis* affirmed as modified.