893 P.2d 1291

Harley CARTER, Petitioner Employee,

v.

INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Asarco Incorporated, Respondent
Employer,

State Compensation Fund,
Respondent Carrier.

Ruben MARRON, Petitioner,

v.

INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Department of Transportation,
Respondent Employer,

State Compensation Fund,
Respondent Carrier.

Nos. CV–93–0159–PR, CV–93–0352–PR.

Supreme Court of Arizona.

April 20, 1995.

Indust. Com'n of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, for Indust. Com'n of Arizona.

State Compensation Fund by Peter C. Kilgard, Chief Counsel, and Lawrence J. Sandell, Phoenix, for State Compensation Fund and the Arizona Dept. of Transp.

Fennemore Craig, P.C. by Timothy Berg, Robert L. Fruge, and John W. Main, Phoenix, for Asarco Inc.

Dept. of Transp. by Joyce Patten, Phoenix, for Arizona Dept. of Transp.

Dee–Dee Samet, P.C. by Dee–Dee Samet, Tucson, for Harley Carter.

The Brian E. Smith Law Firm by Thomas W. Anderson, Yuma, for Ruben Marron.

ZLAKET, Justice.

## FACTS AND PROCEDURAL HISTORY

*Marron:*

On July 1, 1988, while in the course of his employment with the Arizona Department of

Transportation, claimant Ruben Marron was injured in an automobile accident. The State Compensation Fund paid him benefits over the next two and a half years. It closed his claim on December 18, 1990, and assigned him a 10% unscheduled permanent partial disability.

Marron pursued a civil action against third parties for his damages arising out of the accident. He settled the case for $300,000 in cash, plus two annuities. One annuity pays $1,715 monthly for twenty years. The other provides lump sum payments in 5–year intervals as follows:

| | |
|---|---|
| 5 years | $15,000 |
| 10 years | $20,000 |
| 15 years | $25,000 |
| 20 years | $50,000 |
| 25 years | $100,000 |

Thus, Marron is scheduled to receive a total of $921,600 from the settlement.

Out of the cash, this claimant paid $211,-774.78 in attorneys' fees and costs. He also reimbursed the Fund $64,994.25 for those sums previously received. Total proceeds of $644,830.97 remained after deducting these payments; and on November 1, 1991, the Fund asserted a lien credit in that amount against future compensation benefits. Marron requested a hearing, contending that the Fund should have based its lien credit on the present value of his structured settlement rather than on the gross recovery. The parties submitted memoranda in lieu of a hearing. On July 28, 1992, the Administrative Law Judge (ALJ) entered an award upholding the Fund's position.

On August 26, claimant requested review of the award pursuant to A.R.S. § 23–943. The ALJ affirmed his earlier order. Thereafter, pursuant to a petition for special action, the court of appeals set aside the award, holding that a carrier is entitled to a lien credit only on the present value of a structured settlement. *Marron v. Industrial Comm'n,* 176 Ariz. 515, 520, 862 P.2d 888, 893 (Ct.App.1993). The Fund, the Industrial Commission, and the employer all petitioned this court for review.

*Carter:*

On November 13, 1989, Harley Carter filed a compensation claim for an injury he suffered while working for ASARCO, Inc. He was placed on temporary disability status until June 6, 1990, at which time the State Compensation Fund closed his claim with no loss in earning capacity, some unscheduled permanent disability, and provisions for specific long-term care.[1] He had by then received $11,953.87 from the Fund for temporary disability compensation and $13,450.69 from ASARCO in medical benefits.

Carter settled a third party claim against Ciemetta Engineering and Construction Company, Inc., for $116,200 in cash and two annuity contracts. From one annuity, he is scheduled to receive monthly payments of $274 for 30 years, totalling $98,640. From the other annuity, Carter will receive $181,-061, paid out in lump sums every five years as follows:

| | |
|---|---|
| 1996 | $ 6,524 |
| 2001 | $10,568 |
| 2006 | $15,172 |
| 2011 | $21,781 |
| 2016 | $30,621 |
| 2021 | $41,560 |
| 2026 | $54,835 |

His settlement totals $395,901 in cash and annuity payments.

Carter paid $60,476.53 in attorneys' fees and costs. He also fully reimbursed the Fund and ASARCO for past benefits received. On July 29, 1991, the Fund claimed a lien credit in the remaining amount, without any reduction to present value. Carter protested, and counsel stipulated to a determination of the matter without a hearing. On April 24, 1992, the ALJ sustained the Fund's claim. Carter requested review, and the ALJ reaffirmed his previous finding on June 9, 1992. This claimant thereafter filed a petition for special action in the court of

---

1. Approximately one year later, on June 17, 1991, the Industrial Commission concluded that Carter was not entitled to "unscheduled permanent disability compensation under this claim, as he had returned to work for the defendant employer and had suffered no 'loss in earning capacity.' "

appeals, which issued a memorandum decision affirming the ALJ's award. He then petitioned this court for review.

Because these cases involve the same issue, they were consolidated for oral argument. We have jurisdiction under Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24, and Rule 23, Ariz.R.Civ.App.P.

## DISCUSSION

■ In each pending matter, the court of appeals focused primarily on the *amount* of recovery subject to a lien credit. Were we to similarly limit our approach, we would agree with the appellate court's decision in *Marron* that a lien credit should more properly be based on the present value of a structured settlement than on its total gross amount. *See Marron,* 176 Ariz. at 520, 862 P.2d at 893. However, extending the analysis to consider the *time* when such a credit attaches leads us to conclude that what might be termed a floating lien is the most appropriate way to resolve the issue. *See Hagen v. Venem,* 366 N.W.2d 280, 285 (Minn.1985) (commending such a method for most fairly "reflecting the employee's actual financial benefits accrued over the term of the settlement," but refusing its adoption as being administratively burdensome). Simply stated, this approach provides that lien credits against future benefits attach when and to the extent an employee receives settlement payments. It thus implicitly resolves questions of amounts by requiring "that the employer's reimbursement and future credit be recalculated each time the employee actually receives cash in hand over the duration of the payment period." *Id.*

■ A.R.S. § 23–1023(C) states in part:
If [the employee] proceeds against [another] person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the *amount actually collectable* from such other person to the extent of such compensation and medical, surgical and hospital benefits paid.... The *amount actually collectable* shall be the total recovery less the reason-

able and necessary expenses, including attorneys' fees, actually expended in securing such recovery. The insurance carrier or person shall contribute only the deficiency between the *amount actually collected* and the compensation and medical, surgical and hospital benefits provided or estimated by the provisions of this chapter for such case.

(Emphasis added.) In each of the present cases, the ALJ concentrated on the meaning of "amount actually collectable" and concluded that a lien credit extends to the gross amount of future annuity payments. The appeals court addressed the same language, along with the phrase "total recovery." However, because a statute must be viewed as a whole and, where possible, intent given to all its parts, *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991), we must also consider the language in A.R.S. § 23–1023(C) requiring a carrier or "other person liable to pay the claim" to contribute the deficiency between the "amount actually *collected* " and the workers' compensation benefits provided or estimated under the laws. (Emphasis added.)

Prior to the relatively recent proliferation of structured settlements, a claimant would ordinarily receive a lump sum settlement or judgment from the third party tortfeasor. *See* Daniel W. Hindert, et al., *Structured Settlements and Periodic Payment Judgments* § 1.01[1] (1994). In either case, the employer, its compensation carrier, or "other person liable to pay the claim" was entitled to a lien against total proceeds, less appropriate deductions, in the amount of unreimbursed past compensation and a lien credit against future benefits to the extent of any remaining funds received by claimant. *See Polito v. Industrial Comm'n,* 171 Ariz. 46, 828 P.2d 182 (Ct.App.1992). Thus, the credit acted as a deductible that claimant had to exhaust as a condition of obtaining further compensation. *See id.* at 48, 828 P.2d at 184; *Mannel v. Industrial Comm'n,* 142 Ariz. 153, 159, 688 P.2d 1045, 1051 (Ct.App.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1183, 84 L.Ed.2d 331 (1985). Put another way, he or she was required to incur compensable expenses exceeding the "amount actually collected" from the third party before the carri-

er or other responsible party was obligated to pay additional benefits.

We believe the statute should be construed to work in a similar fashion where the recovery from a third party has been structured. With payments over time, there might be periods when compensation benefits to which a claimant is entitled exceed the amount of settlement proceeds previously collected. Consistent with the statute, the carrier or other responsible party should in those instances be required to cover such deficiencies as and when they arise, even though future annuity payments are anticipated. As additional settlement funds are thereafter collected by the claimant, the carrier or other party is entitled to recover previously unreimbursed benefits that it has paid. It also acquires at that time a lien credit against future compensable expenses in the amount of any remaining settlement proceeds already received by claimant.

By providing for the computation of liens and future credits on the basis of settlement funds actually collected, we seek to avoid inconsistency in the application of the statute. The time of lien attachment should not differ according to the form of settlement. Our approach today squares with *State Compensation Fund v. Nelson*, 153 Ariz. 450, 737 P.2d 1088 (1987), which held that a carrier's lien rights attach when the employee "comes into *possession*" of the amount actually collectable. *Id.* at 453, 737 P.2d at 1091 (emphasis added). In that case, we specifically agreed with the Illinois Appellate Court that an "employee need only pay back amounts received from the employer when a 'judgment is obtained *and paid.*'" *Id.* (quoting *Kirk v. Walter E. Deuchler Assoc.*, 96 Ill. App.3d 99, 51 Ill.Dec. .566, 567–68, 420 N.E.2d 1124, 1125–26) (1981)) (alteration in original). Thus, regardless of whether payment is in a lump sum or a series of installments, lien rights attach to funds when a claimant actually receives them. *State Compensation Fund v. Ireland*, 174 Ariz. 490, 851 P.2d 115 (Ct.App.1992), is disapproved to the extent that it holds otherwise.

Although the 1965 legislature may not have been able to foresee the effect structured settlements would have on the lien statute, *see* Hindert, *supra*, § 1.02[4] (stating that use of structured settlements was a "relatively rare phenomenon" until the late 1970s), today's holding furthers the overall purpose of the workers' compensation scheme, which is to protect injured employees and ensure that they receive those benefits to which they are entitled. *See Stephens v. Textron, Inc.*, 127 Ariz. 227, 230, 619 P.2d 736, 739 (1980) (quoting *State ex rel. Industrial Comm'n v. Pressley*, 74 Ariz. 412, 418, 250 P.2d 992, 996 (1952)). Whenever there is a structured settlement of a third party claim, such employees will not be deprived of needed funds because credits against future expense exceed the amount of money they have actually received. At the same time, our decision is consistent with the clear intent of the lien law to promote fairness among all parties and to prevent double recoveries. *See Pressley*, 74 Ariz. at 418, 250 P.2d at 996.

ASARCO argues that a floating lien is administratively impractical. This view was adopted by the Minnesota Supreme Court in *Hagen*, 366 N.W.2d at 285. The court stated that the need for administratively "recalculat[ing] an employer's interest in a settlement each time a payment is received militates against this construction." *Id.* We respectfully disagree. Almost ten years have passed since the Minnesota Supreme Court issued its opinion. In that decade, technology has made huge strides. Computers can now easily be programmed to keep track of these matters. The amounts in question can be adjusted as claimants incur expenses and receive compensation benefits and settlement payments. Further, because such payments will be received in "present dollars," this method avoids the need for disputable present value calculations.

## CONCLUSION

For the foregoing reasons, we hold that lien credits under A.R.S. § 23–1023(C) may attach and be calculated only when a claimant actually receives payments from a structured settlement. The opinion and memorandum decision of the court of appeals are vacated. The rulings of the administrative

law judges are set aside, and these cases are remanded for further proceedings.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.