354 P.2d 28

PETER KIEWIT SONS' CO., a corporation, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona, and Fred W. Alexander, Respondents.

No. 6831.

Supreme Court of Arizona.

July 6, 1960.

Evans, Kitchel & Jenckes, Earl H. Carroll and L. Ray Haire, Phoenix, for petitioner.

Frances M. Long, Phoenix, for respondent, Industrial Commission.

Minne & Sorenson, Phoenix, for respondent, Fred W. Alexander.

BERNSTEIN, Justice.

In this certiorari proceeding Peter Kiewit Sons' Co. (hereinafter called the "Company") seeks to set aside an award of The Industrial Commission of Arizona (hereinafter called the "Commission") which found that on May 29, 1958, Fred W. Alexander (hereinafter called the "Claimant") sustained a personal injury by accident arising out of and in the course of his employment with the Company. The injury resulted from an assault committed on Claimant by a third person not in the employ of the Company. As Claimant has filed an election under A.R.S. § 23–1023 "to pursue his remedy against such other person," the Commission made no findings on the extent of Claimant's injuries or the amount of compensation to which he may be entitled. The sole issue presented is whether the injuries resulted from an "accident arising out of and in the course of his employment" (A.R.S. § 23–1021).

On May 29, 1958, Claimant was employed by the Company as a cement finisher on a construction project on Highway 66 just east of Flagstaff, Arizona. His work day ran from 6:00 A. M. to 2:00 P. M. Shortly before 2:00 P. M. a highway inspector employed by the State Highway Department told Claimant that he was performing his work in a faulty manner and, after a verbal dispute arose between the two, the highway inspector requested the lead foreman to discharge Claimant. The lead foreman thereupon discharged Claimant and told him to wait in his car for his check which would be brought out to him.

At this time Claimant's car was about 80 feet away, "kind of angling" across the highway, where Claimant's wife had parked it to pick up her husband at the end of the work day. Claimant walked to his car, put up his tools, and waited for his check. A few minutes later the general foreman arrived on the scene and, after being met by Claimant, told him to get his check at the Company's office which was located in a trailer court a short distance away.

Claimant thereupon returned to his car, but before he was able to drive away, the highway inspector, accompanied by an armed State highway patrolman, approached the car and started "talking ugly" in front of Claimant and his wife. The highway inspector told Claimant to get out of the car. Claimant did so, and was struck several times and knocked down by the inspector, thereby receiving the injuries which are the subject of this claim.

■ It is clear and, indeed, the Company concedes that the fact that Claimant's injuries resulted from an assault committed by a person not in the Company's employ, does not, of itself, render these injuries non-compensable. A.R.S. § 23–901, subdivision 8, provides:

"'Personal injury by accident arising out of, and in the course of employment' includes an injury caused by the wilful act of a third person directed against an employee because of his employment * * *."

See also, 1 Larson, Workmen's Compensation, § 11.

The Company claims, however, that Claimant's injuries are not compensable because the assault or "accident" did not arise out of and in the course of his employment. The Claimant and the Commission urge that the findings of the Commission are supported by competent evidence and should be affirmed.

■ Under A.R.S. § 23–1021 an employee who is subject to the provisions of the Workmen's Compensation Law is entitled to compensation for injuries resulting from an accident, or, as here, an assault, "arising out of and in the course of his employment." The meaning and

scope of these terms have on several occasions been defined by this Court.

In Goodyear Aircraft Corp. v. Gilbert, 65 Ariz. 379, 382–383, 181 P.2d 624, 626, it was stated:

"Both the elements 'arising out of' and 'in the course of employment' must coexist at one and the same time in order that an award be sustained. Pacific Fruit Exp. Co. v. Industrial Comm., 32 Ariz. 299, 258 P. 253, 55 A.L.R. 975; Brady v. Oregon Lumber Co., 117 Or. 188, 243 P. 96, 45 A.L.R. 812. 'The expressions "arising out of" and "in the course of" the employment are not synonymous; but the words "arising out of" are construed to refer to the origin or cause of the injury, and the words "in the course of" to refer to the time, place, and circumstances under which it occurred. An injury which occurs in the course of the employment will ordinarily, but not necessarily, arise out of it, while an injury arising out of an employment almost necessarily occurs in the course of it.' 71 C.J. 644."

In Sears, Roebuck & Co. v. Industrial Commission, 69 Ariz. 320, 324, 325, 213 P. 2d 672, 674, this Court said that "in the course of employment" refers to the "time, place, and circumstances under which it [the accident] occurred; i. e. coincident with the employment"; whereas the term "arising out of" employment refers to "the origin or cause of the injury." See also McCampbell v. Benevolent & Protective Order of Elks, 71 Ariz. 244, 248–249, 226 P.2d 147, where it was recognized that the conditions of both terms must be satisfied before an award may be sustained.

The Company argues that the assault did not arise "in the course of" Claimant's employment because Claimant had been discharged prior to the assault and because the assault took place outside the Company's premises.

It is not disputed that Claimant had formally been discharged from his employment prior to the time he sustained his injuries. The record shows, however, that Claimant remained in the area in order to receive his pay check. He was told, first, to wait in his automobile, and a few minutes later, to pick up his check at the Company's office. The circumstances immediately leading to the assault took place just after Claimant had returned to his automobile to comply with the latter request or direction.

It is clear that at the time of the assault Claimant was properly in the work area and, for the purposes of Workmen's Compensation, was still in the course of his employment. As stated in Nicholson v. Industrial Commission, 76 Ariz. 105, 109, 110, 259 P.2d 547, 550:

"Generally injuries incurred by the employee while leaving the premises

collecting pay or getting his clothes or tools, within a reasonable time after termination of the employment, or within the course of the employment, are normally incidents of the employment relation. There are numerous cases holding that compensation coverage is not automatically and instantly terminated by the firing or quitting of the employee. The employee is deemed to be within the course of employment for a reasonable period while he winds up his affairs and leaves the premises. * * *

\* \* \* \* \* \*

"We are in accord with those cases holding that an employee has a reasonable length of time within which to collect his pay, gather up his clothes or tools, wash and clean up preparatory to leaving the premises, and while so engaged remains in the course of his employment."

See also, 1 Larson, supra, § 26.30 where it is stated:

"The contract of employment is not fully terminated until the employee is paid, and accordingly an employee is in the course of employment while collecting his pay."

Coverage of the employee is predicated on his right to receive immediate payment of his wages. Thus, A.R.S. § 23–353, subdivision A, provides:

"When an employee quits the service, or is discharged therefrom, he shall be paid wages due him, in lawful money of the United States, or by check of even date on a bank, and the wages shall be paid *at. once."* (Emphasis added.)

In the instant case Claimant's sole purpose in remaining in the work. area was to receive his pay. He fully complied with all the directions of the Company's foremen, and there is no suggestion in the record that Claimant committed. any unreasonable delay in accomplishing his proper purpose. See 1 Larson, supra, §. 26.30; Peterson v. Moran, 111 Cal.App.2d 766, 245 P.2d 540.

The Company urges further that the assault occurred off its premises and, accordingly, did not arise in the course of employment. See McCampbell v. Benevolent & Protective Order of Elks, supra. It is clear that in the instant case there were no well defined premises belonging to or controlled by the Company. The Company was performing a project on a public highway; its office was located in a trailer court in the area. The assault occurred alongside Claimant's car which was parked "kind of angling across the street" on the highway. The car was located about eighty feet from the precise area where Claimant had been working. There was no evidence that there was any physical separation between these two locations or that the Com-

pany exercised greater control and supervision over one location than over the other, or that the risks to which Claimant was subjected by virtue of his employment, at least so far as the assault was concerned, were different in the two locations.

In Field v. Charmette Knitted Fabric Co., 245 N.Y. 139, 156 N.E. 642, the employee Field was assaulted three or four feet from the door of the Company's mill by another employee, Magid, with whom a work dispute had taken place earlier in the day. The Company contended that it was not liable for workmen's compensation because the assault occurred on a public sidewalk located off its premises. In rejecting that contention, Chief Judge Cardozo of the New York Court of Appeals stated:

"We think the line of division is drawn too narrowly and closely when circumstances of place are thus considered to the exclusion of all others. The quarrel outside of the mill was merely a continuation or extention of the quarrel begun within. Magid, pulled away from his enemy indoors, was waiting for his vengeance at the gate, and took it on the instant. The rule is well settled that an employee, even after closing time, is in the course of employment until a suitable opportunity has been given to leave the place of work. Lynch v. City of New York, 242 N.Y. 115, 118, 151 N.E. 149. For that reason, claims have been sustained for injuries on stairs or in elevators, though the stairs or the elevators were not controlled by the employer, a tenant of a loft above. Ross v. Howieson, 232 N.Y. 604, 134 N.E. 589, reversing 198 App.Div. 674, 191 N.Y.S. 276, on the dissenting opinion in that court; Martin v. Metropolitan Life Ins. Co., 197 App.Div. 382, 189 N.Y.S. 467; Id., 233 N.Y. 653, 135 N.E. 956; Sundine's Case, 218 Mass. 1, 105 N.E. 433, L.R.A.1916A, 318. Here, almost in the very act of putting his foot without the mill, the employee is confronted by a danger engendered by his work within. The situation would be hardly different if a struggle, begun back of the threshold, had ended in a fatal blow delivered on the walk. No reasonable opportunity had been offered the assaulted man to separate himself from the plant, its animosities and dangers. *Continuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one.*" (156 N.E. at page 643) (Emphasis added).

In the instant case we hold that the Commission was fully justified, if not required, to find that Claimant's injuries arose in the course of his employment.

The Company urges, further, that the assault did not arise "out of" the employment. This condition, which requires that there be a causal relation between the assault or accident and the employment, was satisfied in the instant case by proof that the subject of the dispute leading to the assault was the manner in which Claimant was performing his duties. See 1 Larson, supra, § 11.12, where it is stated that the

"* * * causal connection with the employment may be shown by connecting the subject-matter of the dispute leading to the assault with the employment.

\* \* \* \* \* \*

"Similarly, it is universally agreed that if the assault grew out of an argument over the performance of the work, * * * the assault is compensable."

The Company contends, however, that the causal connection between the employment and the assault was, in effect severed by Claimant's voluntary act of leaving the safety of his automobile and by the lapse of time between the two events.

The circumstances under which the Claimant left his automobile clearly demonstrate that he was not motivated by an intention or desire to continue the dispute which had resulted in his discharge. He left the car after he had been told to do so by the highway inspector. The inspector was a State employee with sufficient apparent authority to cause Claimant to lose his job, without appeal or review. The inspector was accompanied by an armed State highway patrolman, whose presence, assuredly, added authority to the inspector's actions and, in particular, to the inspector's direction to the Claimant to "get out of the car." In these circumstances, it was perfectly reasonable for Claimant to consider that his personal safety, as well as that of his wife, depended upon his complying with that direction rather than ignoring it and remaining in the car. The Commission properly found that Claimant should not be deprived of his remedies under the Workmen's Compensation Law by having acted as he did.

The record does not show the amount of time that elapsed between the original work dispute and the assault, although the intervening events indicate the passage of at least a few minutes. We recognize that a "cooling-off period" may in certain circumstances convert a work-connected dispute into a private feud based on personal animosity, and render the resulting injuries non-compensable. See 1 Larson, supra, § 11.13. In the instant case the original dispute arose from the manner in which Claimant was performing his duties of employment. The record does not show that there was any prior relationship between the Claimant and the inspector or that

the dispute at any time prior to the assault related to matters unconnected with the work. The fact that the inspector rather than the Claimant was the aggressor makes it clear that the assault was not rooted in Claimant's personal reactions to his having been discharged. Thus, so far as the record shows, the events leading from the original dispute to the assault flowed in a continuous course, unbroken by any intervening circumstances which might have generated a new dispute over matters unconnected with the employment.

In Augelli v. Rolans Credit Clothing Store, 33 N.J.Super. 146, 109 A.2d 439, the Division of Workmen's Compensation dismissed a claim for workmen's compensation by an employee who was assaulted four or five weeks after the work-connected dispute took place. In reversing the dismissal of the employee's claim, the court stated:

"The cooling-off period is naturally a circumstance to be considered; but of itself it should not be controlling. See 1 Larson, Workmen's Compensation, § 11.13 (1952). The basic problem remains, whether the employment originated controversy was the cause or a contributory producing cause of the ultimate assault. It is neither reasonable nor consonant with the spirit of the Workmen's Compensation Act to declare unqualifiedly that the mere passage of time, with its opportunity for reflection, wipes out the occupational origin and connection and transforms the attack into a personal feud.

"Although the time element is a definite factor for consideration, it is secondary to the principal or controlling factor, that is, the relation between the attack and the employment. A contrary view would be unrealistic. As Larson points out (§ 11.13), the victim in the case like the present one has no control over the interval between the two incidents. The control is in the mind of the aggressor. That he nursed a grudge of employment-related origin for an inordinate length of time ought not to militate against recovery by his victim." (109 A.2d at page 441.)

In Hegler v. Cannon Mills Co., 224 N.C. 669, 31 S.E.2d 918, 919, the court, in affirming an award of Workmen's Compensation benefits where the employee died as a result of an attack made upon him two days after the last dispute between himself and his assailant, stated:

"While the assault may have resulted from anger or revenge, still it was rooted in and grew out of the employment."

See also, Petro v. Martin Baking Co., 239 Minn. 307, 58 N.W.2d 731; Pearce v. Modern Sand & Gravel Co., 231 Mo.App.

823, 99 S.W.2d 850; Franklin Coal & Coke Co. v. Industrial Commission, 322 Ill. 23, 152 N.E. 498.

The significant point is that an assault, even one based on a dispute arising out of and in the course of employment, is rarely required or justified by the existence of the employment relationship alone, but is motivated by personal feelings of anger, dissatisfaction, insecurity, revenge or bias. The fact that, after a work-connected dispute has temporarily ceased, the personal feelings of one of the parties do not "cool off," but rather are intensified to cause him to continue the dispute and to commit an assault, should not operate to bar an award of compensation to the innocent injured employee.

 The following quotation from Nicholson v. Industrial Commission, supra, 76 Ariz. at page 108, 259 P.2d at page 549 is particularly appropriate here:

"We feel that any attempt to determine whether a particular injury arises out of and in the course of employment should only be made by a judging body which is constantly aware of the basic concept of the nature and philosophy back of workmen's compensation. This court, from the inception of the Workmen's Compensation Act in this state, when called upon to interpret its terms, has consistently recognized the act to be remedial and that its terms 'should be given a lib-eral construction, with a view of effectuating their evident purpose of placing the burden of injury and death upon industry' ".

We hold that there is competent evidence in the record to support the Commission's finding that Claimant "sustained personal injury by accident arising out of and in the course of his employment," and that this injury is, accordingly, compensable.

The award is affirmed.

STRUCKMEYER, C. J., and PHELPS, JOHNSON and UDALL, JJ., concur.