614 P.2d 851

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Frank W. Hodel, Respondent Employee,**

**Phillips Petroleum Company et al. (Bonanza Tire Company), Respondent Employer.**

**No. 1 CA–IC 2218.**

Court of Appeals of Arizona, Division 1, Department C.

July 10, 1980.

Baker & Damron by John R. Baker, Phoenix, for petitioner carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Ely, Bettini & Ulman by Brian I. Clymer, Walter R. Ulman, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This special action—Industrial Commission presents the question of whether an employee's injuries resulting from an assault that occurred off the employer's premises by an assailant who hid in the employee's car while it was parked on the employer's premises and who sought the employer's business receipts arose out of and in the course of that employee's employment.

The material facts of this case are not in dispute. Respondent, the employee, worked for Phillips Petroleum Company as a service station attendant in Kingman, Arizona. His duties involved selling gasoline and automobile merchandise, and collecting money from these sales. At the end of the business day, respondent would place the money received from the day's sales in a safe located on the premises and close the station.

On November 21, 1977, respondent drove his car to work and parked it on the station premises with his employer's permission. At the end of his work day, respondent placed the receipts in the safe, closed the station and got in his car to drive home. His car had not left the premises since respondent arrived for work. Without respondent's knowledge, an uninvited passenger was hiding in the backseat of his car.

Shortly after leaving the station, respondent's passenger made his presence known by demanding the cash receipts from the station. After being told that the receipts were in the safe at the station, the person then demanded and received respondent's personal cash. This person (whom we shall call the robber) directed respondent to drive to a dump site. At the site, the robber ordered respondent to get out of the car and walk to the edge of an embankment. The robber then pushed respondent over the edge of the embankment and drove away in respondent's car.

Respondent sought workmen's compensation benefits for the injuries sustained in his fall at the dump site; his claim was initially denied. Following a hearing held at respondent's request, the hearing officer issued an award finding the claim compensable. The award was affirmed on administrative review and this timely special action followed.

■ The sole, but not simple, issue is whether respondent was injured "by accident arising out of and in the course of his employment." A.R.S. § 23–1021(A); see Ariz.Const. art. 18, § 8. In order to ease analysis of this issue, our courts have developed a bifurcated approach. To be compensable, an injury must both arise "out of" the employment and "in the course of" the employment. The elements must exist con-

junctively. *Royall v. Industrial Commission*, 106 Ariz. 346, 476 P.2d 156 (1970). We shall call these the "arising" and "course" requirements. To arise out of the employment, the injury must find its cause or origin in the employment. *Id.* To arise in the course of the employment, the injury must have occurred in the time, place and circumstances of the work environment. *Id.* We first consider whether respondent's injuries arose out of his employment.

Regarding the "arising" requirement "the employee must show that the injury had its origin from a risk connected with the employment and that it flowed from that source as a rational consequence . . . ." *Treadway v. Industrial Commission*, 69 Ariz. 301, 308, 213 P.2d 373, 378 (1950); *O'Connor v. Industrial Commission*, 19 Ariz.App. 43, 47, 504 P.2d 966, 970 (1973). The employee must show causation. In respondent's case, the facts are compelling— so much so that petitioner does not argue the lack of causation, though not conceding its presence.

Respondent was injured by a person desirous of robbing the station of its receipts. Only when this desire was thwarted did the robber steal respondent's cash, push him down the embankment and take his car. Respondent's injuries were the direct result of the robber's actions in his attempt to obtain the station's receipts. Petitioner contends that insufficient evidence was presented to demonstrate the work-related nature of the risk of this assault. In our opinion, respondent's unimpeached testimony regarding the robber's demands is sufficient to prove that the risk of robbery by a person seeking the property of respondent's employer could be considered a risk " 'inherent in the employment or [at least] incidental to the discharge of the duties thereof.' " *Royall v. Industrial Commission*, 106 Ariz. at 349, 476 P.2d at 159. We acknowledge that the cause of respondent's injuries may not have been wholly work related because the robber may have intended to take both the respondent's and the employer's property. However, this does not alter our conclusion be-

cause an industrially related incident does not have to be the sole cause of a claimant's injuries, so long as it is a cause. *McNeely v. Industrial Commission*, 108 Ariz. 453, 501 P.2d 555 (1972).

The fact that the robber entered respondent's car when it was parked on the employer's premises, while more properly relating to the "course" requirement, does demonstrate a causal link between respondent's employment and injuries. The robber's place of entering the car tends to bolster the conclusion that he held, in part at least, the intent to rob respondent of the station's receipts. We conclude that respondent's injuries were work related and had their origin in his employment. This conclusion is reasonably supported by the evidence. We next consider whether these injuries arose in the course of respondent's employment.

We reiterate that the term "in the course of" the employment refers to the time, place and circumstances in which the injury arises.

The type of activity which most clearly satisfies the "course" test is the active performance by the employee of the specific duties which he was engaged to perform. A "weaker" class of activity—that is, which does not so clearly meet the "course" test or may fail to meet it altogether—includes those activities which are only incidental to the performance of the employee's duties, such as seeking personal comfort, going to and coming from work, engaging in recreation, and the like. Some of the activities of the latter type have been held to fall completely short of satisfying the "course" test. For example, in this jurisdiction, if at the time of an accident an employee is on his way to work or is on his way home from work with no duty to perform for his employer, the "going and coming" rule applies and the injury is noncompensable as being not within the course of employment. (citations omitted)

*Royall v. Industrial Commission*, 106 Ariz. at 350, 476 P.2d at 160. Petitioner contends that the "going and coming" rule should

have been applied to respondent's claim because he was injured after working hours, outside the employer's premises, while on his way home and not carrying out any duties of his employment. We reject petitioner's contention.

In granting respondent compensation, the hearing officer relied on the case of *Peter Kiewit Sons' Co. v. Industrial Commission*, 88 Ariz. 164, 354 P.2d 28 (1960). We believe that this case is analogous, if not controlling. In *Peter Kiewit Sons' Co.*, the claimant, a cement finisher, was fired on the job site after a highway inspector, a party unaffiliated with the claimant's employer, requested that he be dismissed for faulty workmanship. After being fired, and after receiving his check, the claimant was assaulted by the highway inspector. The claimant sought compensation for the injuries received in the assault. The employer argued that the claimant's injuries did not arise in the course of his employment because he had been discharged prior to the assault and because the assault took place off the employer's premises. The court determined that the injuries did in fact meet the "course" requirement.

Regarding the claimant's "off-premises" argument, the *Peter Kiewit Sons' Co.* court concluded that because the bounds of the work site, a public highway project, were so ill-defined and the assault occurred a mere eighty feet from where the claimant had been working, the claimant was within "the work-area" of his employment when he was assaulted. Although the claimant had been discharged prior to his assault, the court found that he was still in the course of his employment for a reasonable period of time while he remained in the work area to receive his pay. The court cited, with approval, the New York case of *In re Field v. Charmette Knitted Fabric Co.*, 245 N.Y. 139, 156 N.E. 642 (1927) in which an employee was assaulted just outside the employer's door at workday's end by a co-employee, with whom a work dispute had taken place earlier in the day. The New York Court of Appeals granted compensation, even though the assault took place off the employer's premises.

We think the line of division is drawn too narrowly and closely when circumstances of place are thus considered to the exclusion of all others. The quarrel outside of the mill was merely a continuation or extension of the quarrel begun within. Magid, pulled away from his enemy indoors, was waiting for his vengeance at the gate, and took it on the instant. The rule is well settled that an employee, even after closing time, is in the course of employment until a suitable opportunity has been given to leave the place of work. . . . Here, almost in the very act of putting his foot without the mill, the employee is confronted by a danger engendered by his work within. The situation would be hardly different if a struggle, begun back of the threshold, had ended in a fatal blow delivered on the walk. No reasonable opportunity had been offered the assaulted man to separate himself from the plant, its animosities and dangers. (citations omitted)

*Id.* at 142, 156 N.E. at 643. The court's rationale is contained in the following epigram by Judge Cardozo, which was quoted with emphasis by our supreme court in *Peter Kiewit Sons' Co.*: "Continuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one." *Id., quoted in* 88 Ariz. at 170, 354 P.2d at 32.

In both *Peter Kiewit Sons' Co.* and *Field*, work-related incidents occurred upon the employer's premises that culminated in off-premises assaults. This is precisely respondent's situation. Assuredly, the "course" element is weak on the instant facts. The injury neither occurred on the employer's premises nor while respondent was engaged in any activity at the employer's behest. The only event that temporally relates the assault to respondent's employment is the robber's presence in the car parked on the employer's premises. Yet, this fact is significant when viewed in light of the robber's later statements to respondent demanding first, the station's receipts and then, respondent's personal property. The robber's scheme to rob respondent was put

in action when the robber entered the car. These facts demonstrate that the unbroken sequence of events which led to the assault began within the time, place and circumstances of respondent's employment.

Petitioner places substantial reliance on the case of *Malacarne v. City of Yonkers Parking Authority*, 41 N.Y.2d 189, 391 N.Y. S.2d 402, 359 N.E.2d 992 (1976). In *Malacarne*, the claimant was a parking lot attendant whose job involved collecting money from the lot's customers. After closing he regularly deposited the day's receipts in a bank across the street from the lot. On the night of his death, the claimant left work early to go and visit relatives. Another employee assumed that night's bank deposit duty. The claimant performed no other duties for his employer after leaving the lot. Following a thirty-minute drive, the claimant arrived at his destination and was murdered by an unknown assailant. The assailant allegedly demanded the receipts of the parking lot. The New York Court of Appeals denied compensation. Following Judge Cardozo's "continuity of cause . . contiguity in time and space" test, the court found that there was insubstantial evidence to support a conclusion that an attempted robbery began at the deceased's point of departure from the parking lot. Although this may be an overly wooden view of Judge Cardozo's concept and one to which we, of course, are not bound, we have just concluded that, in the case before us, the robbery did begin on the employer's premises. There is no parallel between respondent's case and *Malacarne*.

We conclude that respondent's injuries did arise out of and in the course of his employment. Causation and time and space have combined to produce a compensable injury.

The award is affirmed.

HAIRE and JACOBSON, JJ., concur.