877 P.2d 1336

**SALT RIVER PROJECT/BECHTEL CORPORATION, Petitioner Employer,**

Salt River Project/Bechtel Corporation c/o Sedgwick James of Arizona, Inc., Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

James Cole, Respondent Employee,

Industrial Commission of Arizona Special Fund, Respondent.

No. 1 CA–IC 92–0196.

Court of Appeals of Arizona, Division 1.

July 14, 1994.

Jennings, Strouss & Salmon by Ronald H. Moore, Phoenix, for petitioner employer and carrier.

Anita R. Valainis, Chief Counsel, the Indus. Com'n of Arizona, Phoenix, for respondent.

Tretschok, McNamara & Clymer, P.C. by Dale D. Tretschok, Tucson, for respondent employee.

Laura L. McGrory, the Indus. Com'n of Arizona, Phoenix, for respondent Special Fund.

## OPINION

EHRLICH, Judge.

Salt River Project/Bechtel Corporation ("SRP") petitions this court to review an award in which the Industrial Commission granted James Cole permanent total disability compensation, refused to impose liability on the Special Fund for those benefits under the pre–1986 version of Arizona Revised Statutes Annotated ("A.R.S.") section 23–1065(A)(3) and (4), and denied SRP any credit for past permanent disability compensation it paid to Cole for the same injury. In this opinion, we only decide the meaning of the phrase "general physical functional disablement" as it appears in section 23–1065(A)(4). We address SRP's other issues in a separate memorandum decision filed this date.

### FACTS AND PROCEDURAL HISTORY

In 1979, Cole injured both knees while at work for Bechtel Corporation.[1] This claim ultimately was closed in October 1990. The supporting medical report by orthopedic surgeon Richard J. Toll, M.D., rated a 35 percent right-leg impairment and a ten percent left-leg impairment. Dr. Toll also reported that, "[u]sing the combined value tables, the impairment[s] of the right and left leg[s] tabulate to a 42% permanent partial impairment to the whole body." In contrast, an independent medical examiner, orthopedic surgeon Bertram G. Kwasman, M.D., assigned Cole a 38 percent right-leg impairment, a 19 percent left-leg impairment and a corresponding 23 percent whole-person impairment.

Following hearings, the Administrative Law Judge ("ALJ") resolved the conflicting ratings in favor of Dr. Kwasman, and concluded that SRP had failed to prove that Cole had 40 percent or greater "general physical functional disablement" as required by section 23–1065(A)(4).[2] SRP brought a special action to challenge this finding among others addressed in the companion decision.

### DISCUSSION

On review, SRP maintains that it satisfied the statutory requirements for the Commission to apportion compensation between it and the Special Fund. Among these is the requirement that "the combined disabilities total forty per cent or more general physical functional disablement." A.R.S. § 23–1065(A)(4). SRP presents several arguments attacking the ALJ's finding that this requirement was unsatisfied. We address them in turn.

First, SRP contends that Dr. Kwasman's rating for Cole's whole-person impairment is contrary to the *Guides to the Evaluation of Permanent Impairment* (Alan L. Engelberg, M.D., M.P.H., ed., 3rd ed. 1988) ("*AMA Guides*") on which he relied. The *AMA Guides* provide that the extremity ratings for a claimant's impairment due to loss-of-motion and arthroplasty are combined by using the Combined Values Chart. *Id.* at 61, Table 36. Then, to determine the whole-person impairment related to this combined value, the rater must refer to Table 42. *See id.* at 65, § 3.2e and Table 42.[3]

---

1. Bechtel carried workers' compensation insurance with The Hartford Insurance Group. At some point, apparently pursuant to an indemnification agreement, SRP, which is self-insured, assumed liability for Bechtel's workers' compensation claims. Sedgwick James of Arizona, Inc., now administers SRP's claims.

2. Prior to its amendment in 1986, this subsection provided:

   An employee who suffers from a pre-existing disabling condition other than defined in paragraphs 2 and 3 of this subsection whether or not created by an industrial injury, and who thereafter sustains an injury by accident arising out of and in the course of his employment within the meaning of § 23–1044, which subsequent accident has permanently aggravated *the previous condition*, shall receive such bene-

fits as provided in § 23–1044, however, the compensation payable for the combined disabilities shall be apportioned upon the ratio of the percentage of the pre-existing general physical functional disability of the total percentage of the combined general physical functional disability and the amount of compensation so attributable to the pre-existing general physical functional disability shall be paid solely from the funds created by this section, *provided the combined disabilities total forty percent or more general physical functional disablement.*

   A.R.S. § 23–1065(A)(4) (emphasis added).

3. Dr. Kwasman apparently did not use the Combined Values Chart to combine the whole-person impairments resulting from each lower-extremity impairment. Instead, he simply added the re-

Dr. Kwasman testified that he used the Combined Values Chart found in the third edition of the *AMA Guides* to ascertain the rating for each of Cole's knee impairments,[4] and then he referred to the appropriate table to determine the commensurate whole-person impairment from each of the combined values. His method is substantiated in his report of November 20, 1991. Because Dr. Kwasman's impairment ratings for Cole's lower extremities were substantially similar to Dr. Toll's, Dr. Kwasman surmised that Dr. Toll had erroneously used the Combined Values Chart rather than the appropriate table to extrapolate the whole-person impairment resulting from Cole's lower-extremity impairment. Dr. Kwasman correctly applied the *AMA Guides*.

■ SRP next argues that Dr. Toll's whole-person impairment rating of 42 percent is res judicata because the notices of October 1990 closing Cole's claim with permanent impairment and an unscheduled disability are final. As the Special Fund submits, we need not address this argument because SRP has waived it. Res judicata is an affirmative defense which is waived if not asserted timely. *See, e.g., Superlite Builders v. Industrial Commission*, 126 Ariz. 51, 53, 612 P.2d 507, 509 (App.1980). During the hearings, SRP never objected to Dr. Kwasman's whole-person impairment of 23 percent. Indeed, SRP failed to raise the defense of res judicata in its post-hearing memorandum and subsequent request for review. Therefore, SRP improperly has asserted this defense for the first time on appeal.

Finally, SRP maintains that the phrase "combined disabilities total forty per cent or more *general physical functional disablement*," A.R.S. § 23–1065(A)(4) (emphasis added), refers to a claimant's total lower-extremity impairment when the impairments at issue are of the lower extremities. In the current case, SRP submits that, because Cole's combined lower-extremity impairment, as opposed to the combined whole-person

sulting whole-person impairments. We need not determine whether the Combined Values Chart applies, however, because, in any event, the whole-person impairment is less than 40 percent.

impairment, exceeds 40 percent, the evidence satisfied the statutory requirement.

■ Statutory interpretation is a question of law which we consider de novo. *E.g., Parker v. Vanell*, 170 Ariz. 350, 351, 824 P.2d 746, 747 (1992). In doing so, our goal is to effectuate the intent of the legislature which we infer from the language of the statute and the act of which it is part. *E.g., State Compensation Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). We also may infer intent from the general purpose of the act. *See, e.g., City of Tucson v. Superior Court*, 165 Ariz. 236, 240, 798 P.2d 374, 378 (1990). Finally, we will give the language of a statute its ordinary meaning unless used in a technical sense. A.R.S. § 1–213.

■ We conclude that the phrase "general physical functional disablement," as it appears in section 23–1065(A)(4), has a technical meaning equivalent to whole-person impairment. The latest edition of the *AMA Guides* defines impairment of the "whole person" to mean impairment of the "general physiologic functioning" of the person, *AMA Guides* 3 (3rd ed. rev. 1990), and, as noted previously, the *AMA Guides* provide a table for converting a lower-extremity impairment to a whole-person impairment. *AMA Guides* 65, Table 42 (3rd ed.); *accord AMA Guides* 72, Table 46 (3rd ed. rev.). One commentator distinguishes between compensation based upon "loss or impairment of a hand, foot, leg, arm, or eye" and compensation based on "percentage disability of the body as a whole or of 'general disability.'" 1C Arthur Larson, *The Law Of Workmen's Compensation* § 58.22, at 10–492.208–10–492.212 (1993). Because the statutory requirement of a combined impairment of 40 percent or greater must apply to every possible combination of impairments, a common measure of impairment is necessary. The only such universal measure is that of the whole-person.

4. In his report of November 20, 1991, Dr. Kwasman rated impairments for Cole's loss-of-motion, arthroplasty, and quadriceps atrophy of his right knee, and loss-of-motion and partial meniscectomy of his left knee.

■ SRP's suggested contrary interpretation would result in the Special Fund being proportionally liable for combined whole-person impairments of less than 40 percent. While we recognize that section 23–1065(A)(4) has the remedial purpose of encouraging the employment of disabled workers, there nonetheless must be compliance with the statutory requirements for imposing liability on the Special Fund even if, as a result, "more was promised as an incentive to hiring handicapped persons than was actually provided by the legislature." *State Compensation Fund v. Harris*, 26 Ariz.App. 9, 13, 545 P.2d 971, 975 (1976). The ALJ correctly determined that the Special Fund is not responsible under section 23–1065(A)(4) for a proportionate share of Cole's unscheduled disability benefits.[5]

The award is affirmed.

GRANT, P.J., and VOSS, J., concur.

---

**5.** Having concluded that the ALJ correctly denied apportionment, we need not address Cole's argument that this court may separately set aside this part of the award while affirming the remaining parts of it.