897 P.2d 707

**FREMONT INDEMNITY COMPANY, Petitioner Carrier,**

**Mega Foods, Petitioner Employer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Martha Bynum, Respondent Employee,**

**Special Fund Division, Respondent Real Party in Interest.**

No. 1 CA–IC 93–0157.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 10, 1995.

Review Denied June 29, 1995.

---

* The Honorable Steven D. Sheldon, Judge of the Maricopa County Superior Court, was authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. 6, § 31.

Jones, Skelton & Hochuli by Charles G. Rehling, Phoenix, for petitioners carrier and employer.

Anita R. Valainis, Chief Counsel, the Indus. Com'n of Arizona, Phoenix, for respondent.

Schiffman, Hozier & Kurth by Dennis Kurth, Phoenix, for respondent employee.

Maria A. Morlacci, the Indus. Com'n of Arizona, Phoenix, for respondent real party in interest.

## OPINION

LANKFORD, Presiding Judge.

■ This is a special action review of an industrial commission award and a decision

upon review affirming this award. The award incorporated a stipulated loss of earning capacity and denied apportionment of the resulting disability compensation between Petitioner Carrier and Respondent Real Party In Interest ("Special Fund Division")[1] under Arizona Revised Statutes Annotated ("A.R.S.") section 23–1065(C) (Supp.1993).

The carrier presents one issue for review: Does written evidence of continued employment, coupled with other evidence that the employer knew of a preexisting impairment during the continued employment, satisfy A.R.S. section 23–1065(C)(2)? That provision restricts apportionment to cases in which "[t]he employer establishes by written records that the employer had knowledge of the permanent impairment at the time the employee was hired, *or that the employee continued in employment after the employer acquired such knowledge.*" (Emphasis added). We conclude that the employer's evidence is insufficient. Accordingly, we affirm the award denying apportionment.

### I.

The employee is an insulin-dependent diabetic. She is also hearing impaired and hypertensive. When she completed a written application to work for Petitioner Employer Mega Foods in June 1989, she did not disclose the diabetes or hypertension, but she did reveal that her hearing loss interfered with her ability to work. Mega Foods subsequently hired her to work as a bread stocker on an early morning shift.

On August 29, 1991, the employee injured her right hand and left shoulder in a work-related accident. The carrier accepted compensability and routinely processed the claim until it terminated benefits on the basis of a permanent impairment on July 25, 1992. On July 31, 1992, the carrier presented a claim of apportionment to the Industrial Commission. To support its claim, the carrier included a July 20, 1992 handwritten note from

Mega Foods' bookkeeper, which stated that Mega Foods was "fully aware of ... [the employee's] diabetes."

The Commission subsequently awarded permanent partial disability compensation but denied the carrier's claim for apportionment. The carrier timely requested a hearing, asserting both that the employee had a greater earning capacity and that any compensation should be apportioned.

Prior to the first hearing, the carrier timely filed letters dated April 28, 1993 from Mega Foods' director of operations and director of personnel to the carrier's counsel. The operations director's letter stated that "[a]s hiring manager I ... was aware of ... [the employee's] diabetic condition ... [and] of the ongoing need for her to take her insulin medicine." He also claimed that Mega Foods accommodated the employee's insulin dependency by scheduling her to work during the early morning hours. Similarly, the personnel director stated that "[t]hrough my personnel duties I ... have been aware of ... [the employee's] diabetic condition ... and of the ongoing need for her to take insulin medicine." She too claimed that Mega Foods accommodated the employee's insulin dependency by scheduling her to work during the early morning hours.

Also before the hearing, the employee timely submitted several payroll check stubs dated after her July 1992 medical discharge *to support her claim for compensation.* These check stubs confirmed that she had resumed part-time employment with Mega Foods after her medical discharge.

At the first hearing, the employee and the carrier stipulated to her earning capacity. The employee testified that Mega Foods knew of her diabetic condition when it hired her. She also explained that when she and the operations manager were both under the employment of a previous employer, the operations manager had supervised her then

---

1. Although the Industrial Commission generally lacks standing to appear as an advocate, it has standing in this case to defend the integrity of the Special Fund. *See Evertsen v. Industrial Comm'n*, 117 Ariz. 378, 382, 573 P.2d 69, 73 (App.1977), *approved and adopted*, 117 Ariz. 342,

572 P.2d 804 (1977). Respondent employee is a party to this special action, but she has not actively participated because the apportionment dispute is between the carrier and the Special Fund Division.

and had been aware of her medical condition.[2]

During the hearing, the administrative law judge ("ALJ") questioned the carrier's counsel concerning the written records on which the carrier relied to satisfy the statute. When the carrier admitted that it did not have a written contemporaneous record establishing that Mega Foods either knew of the employee's diabetes when it hired her or that it retained her after discovering her medical condition, the ALJ terminated the hearing.

Subsequently, the carrier and the Special Fund Division submitted post-hearing memoranda. The carrier argued that A.R.S. section 23–1065(C)(2) either does not require a written record contemporaneous with the date of hire, or does not require any written record if the employer retained the employee after discovering the impairment. Alternatively, the carrier asserted that the statute requires no more than a written record establishing continued employment if there is other evidence indicating that the employer actually knew of the impairment before the industrial injury and during the continued employment.

The ALJ then issued the award denying apportionment. On administrative review, the carrier reiterated its alternative arguments and the ALJ summarily affirmed the award. The carrier then brought this special action.

## II.

The carrier interprets A.R.S. section 23–1065(C)(2) to require no written record establishing the employer's knowledge of the preexisting impairment. Instead, the carrier argues that the statute is satisfied by a written record of continued employment when other nonwritten evidence shows that the employer knew of a preexisting impairment before the industrial injury and during the continued employment.[3] We disagree with this interpretation.

Statutory interpretation is a question of law and is therefore reviewed *de novo*. *Salt River Project/Bechtel Corp. v. Industrial Comm'n*, 179 Ariz. 280, 282, 877 P.2d 1336, 1338 (App.1994). In interpreting statutes, we must effectuate the intent of the legislature. *State Compensation Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). This intent may be inferred from the language utilized in the statute and in the entire act of which it is a part, and from the general purpose of the act. *Salt River Project/Bechtel Corp. v. Industrial Comm'n*, 179 Ariz. at 282, 877 P.2d at 1338, citing *City of Tucson v. Superior Court*, 165 Ariz. 236, 240, 798 P.2d 374, 378 (1990); *State Compensation Fund v. Nelson*, 153 Ariz. at 453, 737 P.2d at 1091. Therefore, we "must, if possible, give meaning to each clause and word in the statute ... to avoid rendering anything superfluous, void, contradictory, or insignificant." *Devenir Assoc. v. City of Phoenix*, 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991) (citation omitted).

In our opinion, the carrier's interpretation trivializes the statutory written records requirement. The only possible dispute at the apportionment stage of a claim is whether and when the employer discovered the injured worker's preexisting impairment. Why would the legislature require a written record merely to establish continued employment? The workers' compensation claim and notice of claim status accepting compensability have conclusively established that the employee was working at the time of injury. *Cf. Noble v. Industrial Comm'n*, 140 Ariz. 571, 574, 683 P.2d 1173, 1176 (App.1984) (accepting compensability conclusively establishes elements of compensable claim). An additional written record is unnecessary to establish continued employment. The only significant purpose served by requiring a separate written record is to establish the employer's knowledge of the preexisting impairment during the employment.

The carrier's interpretation would eviscerate the written records requirement. In its view, oral evidence that the employer actually knew of the preexisting impairment before

---

2. She denied, however, that Mega Foods accommodated her insulin schedule by assigning her early morning hours.

3. The carrier has abandoned in this special action the alternative arguments it made to the ALJ.

an industrial injury will always satisfy the statute.

 The carrier attempts to justify its interpretation by arguing that the statutory requirement is unwise. The carrier argues that the requirement both excludes otherwise valid apportionment claims and is unnecessary because ALJs are capable of separating valid claims from collusive ones. Arguments about the wisdom of the statute must be addressed to the legislature, not to the courts. "The legislature has imposed this specific requirement [of a written record], and we cannot negate it by interpretation." *Schuff Steel Co. v. Industrial Comm'n,* 181 Ariz. 435, 446, 891 P.2d 902, 913 (App.1994) (rejecting argument that apportionment hearing transcript satisfies written records requirement).

## Conclusion

 The ALJ correctly rejected the carrier's claim for apportionment. A.R.S. section 23–1065(C)(2) requires more than a written record establishing continued employment. Accordingly, we affirm the industrial commission award.

GARBARINO and NOYES, JJ., concur.