927 P.2d 791

NO INSURANCE SECTION/SPECIAL
FUND DIVISION, Petitioner
Party in Interest,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Lori S. Leanza, Respondent Employee.

No. 2 CA–IC 95–0021.

Court of Appeals of Arizona,
Division 2, Department B.

April 18, 1996.

Review Denied Nov. 19, 1996.

Industrial Commission of Arizona, Special
Fund Division by Maria Morlacci, Phoenix,
for Petitioner Party in Interest.

Industrial Commission of Arizona by Anita
R. Valainis, Chief Counsel, Phoenix, for Re-
spondent.

Dix & Forman, P.C. by Robert J. Forman,
Tucson, for Respondent Employee.

**OPINION**

DRUKE, Chief Judge.

In this statutory special action, the No
Insurance Section/Special Fund Division
(Special Fund) challenges an award entered
by the Industrial Commission ordering the
Special Fund to pay an injured employee,
Lori Leanza, a $500 bad faith penalty that
the Commission had previously assessed
against her uninsured employer. We affirm
the award.

On August 24, 1992, Leanza filed a work-
ers' compensation claim for a back injury she
suffered when she lifted a keg of beer while
working at the Home Plate Pub. The em-
ployer objected to her claim, alleging fraud.
Following hearings, the administrative law
judge (ALJ) determined the employer was
uninsured, found Leanza's claim compensa-
ble, and entered an award in June 1993. The
next month, Leanza filed a complaint for bad
faith against her employer pursuant to
A.R.S. § 23–930. In March 1994, the Com-
mission found bad faith and ordered the em-
ployer to pay Leanza a penalty of $500.
Because the employer had "closed down,"
Leanza asked the Special Fund to pay the
penalty. When it refused, she requested a
hearing pursuant to § 23–1061(J), and the
ALJ ordered the Special Fund to pay the
penalty by award dated March 16, 1995.

The Special Fund argues on appeal that,
while § 23–907(B) authorizes it to pay com-

pensation to employees who are injured while working for uninsured employers, the statute does not authorize it to pay bad faith penalties assessed against those employers pursuant to § 23–930(B).

This case presents a question of statutory interpretation, which we review *de novo. Salt River Project v. Industrial Comm'n,* 179 Ariz. 280, 877 P.2d 1336 (App.1994). We determine a statute's intent from its language, the general purpose of the act in which it appears, and the language of the act as a whole. *Id.* Because this case involves the Workers' Compensation Act, we interpret its provisions liberally in favor of the worker to advance the Act's purpose of placing the burden of industrial injuries on industry rather than the injured worker. *Bill Breck Dodge, Inc. v. Industrial Comm'n,* 138 Ariz. 388, 675 P.2d 275 (1983); *Peter Kiewit Sons' Co. v. Industrial Comm'n,* 88 Ariz. 164, 354 P.2d 28 (1960).

The first statute we consider is § 23–907(B). It allows an employee of an uninsured employer to

file his application with the commission for *compensation* in accordance with the provisions of this chapter.... The *compensation ...* shall be paid from the special fund established by § 23–1065 to the person entitled thereto after a finding and award for *benefits* has been issued and becomes final.

(Emphasis added.) Section 23–901(4) defines "compensation" as "the compensation and benefits provided by this chapter." The Special Fund contends the phrase "compensation and benefits" must be interpreted strictly because "[n]one of the statutory sections ... establish[es] [an employee's] right to payment of the assessed penalty from Special Fund monies." Consistent with the authorities above, however, we believe the legislature intended a broad interpretation of the phrase because, had it not, it would have

specified various possible components of compensation, such as wage compensation, death benefits, medical or surgical benefits, vocational rehabilitation, and physical therapy. These are all available under the Act and are generally considered compensation or benefits.

The fundamental question we must decide then is whether the penalty ordered here pursuant to § 23–930(B) is compensation or benefits under the Act. Section 23–930(B) provides:

If the commission finds that unfair claim processing or bad faith has occurred in the handling of a particular claim, it shall award the claimant, in addition to any benefits it finds are due and owing, a *benefit penalty* of twenty-five per cent of the benefit amount ordered to be paid or five hundred dollars, whichever is more.

(Emphasis added.) In interpreting this statute, we find it significant that the legislature used the word "benefit" in conjunction with the word "penalty." It need not have done so. Because it did, we presume that the legislature intended the word "benefit" to have meaning, *Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952), and that it intended the penalty to be part of the employee's benefits; otherwise, it would not have provided that the benefit penalty be "in addition to any benefits" awarded by the Commission. We thus conclude that the benefit penalty provided for in § 23–930(B) falls within the statutory definition of compensation found in § 23–901(4) and must be paid by the Special Fund along with other compensation awarded by the Commission pursuant to § 23–907(B).[1]

The Special Fund contends, however, that the Commission cannot order it to pay a bad faith penalty, citing *Spear v. Industrial Comm'n,* 114 Ariz. 601, 562 P.2d 1099 (App. 1977). We find *Spear* inapposite. There, because her employer was uninsured, the injured employee first filed a complaint for her injuries in superior court and then filed an application for compensation with the Commission. After this court held that the

1. We reach this conclusion despite the dissent's contention that § 23–1065(A) limits the Special Fund to "the promotion of vocational rehabilitation" of disabled persons. This limitation is inapplicable to § 23–907(B), for if it were applicable, employees of uninsured employers would be precluded from recovering fully for their injuries under § 23–907(B). The two statutes simply establish different but complementary purposes for the Special Fund.

filing of the superior court complaint constituted an election of remedies under § 23–1024, we addressed the employee's contention that § 23–1061(M) estopped the Commission and Special Fund from raising the election issue. Section 23–1061(M) imposes the sanction of immediate payment on an insurance carrier that fails to deny a claim within twenty-one days after it receives a notice of claim or petition to reopen. We rejected the employee's estoppel argument summarily, stating: "The short answer to this contention is that here we do not have a *carrier* against whom to assess the statutory penalty for delay, nor do we find any undue delay on the Commission's part under the total circumstances of this case." *Spear*, 114 Ariz. at 606, 562 P.2d at 1104. In this case, however, we are faced not only with a different penalty statute, but with an entirely different issue. In a case more on point, the California Supreme Court reasoned:

> No one, of course, contends that the state or the Fund is guilty of any wrongdoing; the obligation arising under [West's Ann. Labor Code] section 3716 is not imposed as a penalty for any misconduct by the state. Rather, the new statutory provisions merely establish the Fund as an immediate source of money to which an injured employee can resort when his employer is uninsured and fails to pay a compensation award; the statutory scheme contemplates that the Fund, having paid the employee's award as an initial matter, will then proceed against the employer and will recover the entire award from him.... Consequently, it is the employer, rather than the Fund, who must ultimately pay the additional penalties awarded because of the employer's failure to insure.

*Flores v. Workmen's Compensation Appeals Board*, 11 Cal.3d 171, 113 Cal.Rptr. 217, 222, 520 P.2d 1033, 1038 (1974) (superseded by statute, 1976; *see Du Bois v. Workers' Compensation Appeals Board*, 5 Cal.4th 382, 20 Cal.Rptr.2d 523, 528, 853 P.2d 978, 983 (1993)).

We find the court's reasoning in *Flores* persuasive and equally applicable here because Arizona has a similar statutory scheme, as this case demonstrates. Pursuant to § 23–907(B), Leanza applied for compensation to the Commission, instead of filing a civil action against her uninsured employer, and the Commission awarded her disability compensation, medical benefits, and a $500 benefit penalty. As we interpret § 23–907(B), the Special Fund must now pay the Commission's award for the uninsured employer. Pursuant to § 23–907(C), the Special Fund may then recover from the employer the "amount expended" plus interest and a penalty of ten percent or $500, whichever is greater. Because the phrase "amount expended" is undefined, we conclude that its meaning is necessarily coextensive with that given "compensation"; otherwise, the Special Fund might be prevented from recovering all amounts awarded by the Commission.

Moreover, this statutory scheme places the burden of recovery where it should be, on the Special Fund. As a practical matter, the Special Fund is in a better position than the employee to recover the bad faith penalty because it can simply include the penalty amount in recovering any other amounts it has expended. The employee, on the other hand, may well forego collection because attendant costs such as hiring an attorney could, as here, substantially exceed the penalty. This would, as to uninsured employers, effectively eviscerate the deterrent effect of the bad faith statute.

Finally, the Special Fund argues that compelling it to pay a bad faith penalty "severely punishes those employers that obey the law by contributing to the Special Fund." We fail to see how the Special Fund's payment of this penalty "punishes" insured employers any more than does the Special Funds's payment of other compensation and benefits owed by uninsured employers. As Professor Larson points out, the scope of an uninsured employers' fund "is identical to that of the uninsured employer-no more and no less." 2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 67.40, at 12–196 (1995). Because nothing in the Act suggests the legislature intended otherwise, we affirm the Commission's award ordering the Special Fund to pay the benefit penalty.

ESPINOSA, P.J., concurs.

EHRLICH, Judge, dissenting.

The majority's determination that the No-Insurance Section/Special Fund Division

("Special Fund") must pay a "benefit penalty" assessed against an uninsured employer for interposing a defense of fraud in bad faith is neither supported by statute nor justified by the policies and purposes underlying the Workers' Compensation Act. Ariz.Rev.Stat. Ann. ("A.R.S.") § 23–901 *et seq.* The fact that we must broadly interpret the provisions of the Act in order to promote its underlying purpose, *see, e.g., Wiley v. Industrial Comm'n,* 174 Ariz. 94, 100, 847 P.2d 595, 601 (1993), "to compensate an employee for lost earning capacity and to prevent the injured employee and dependents from becoming public charges during the period of disability," *Mail Boxes v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995), does not justify the statutorily-questionable determination that the Special Fund is liable to pay the "benefit penalty" in this case. I would set aside the award.

Beginning with section 23–1065(A), the section establishing the general purpose of the Special Fund and its funding, we are pertinently informed that:

The industrial commission may direct the payment into the state treasury of not to exceed one and one-half per cent of all premiums received by the state compensation fund and private insurance carriers during the immediately preceding calendar year.... Such assessments ... shall be no more than is necessary to keep the special fund actuarially sound. Such payments shall be placed in a special fund within the administrative fund to provide, at the discretion of the commission, such additional awards as may be necessary *to enable injured employees to accept the benefits of any law of the state or of the United States, or both jointly, for the promotion of vocational rehabilitation of persons disabled in industry.* [Emphasis added.]

The majority wholly ignores this statute and, more importantly, the clause emphasized above. As written, the statute provides that the only additional awards which the Special Fund can make—and, it should be noted, made only "at the discretion of the commission"—are those which will enable injured employees to take advantage of any

state or federal program of vocational rehabilitation. As the "benefit penalty" assessed pursuant to section 23–930(B) is not, by its very nature, a "law ... for the promotion of vocational rehabilitation," section 23–1065(A) provides no basis to support the Special Fund's liability for such payments.

This reading of section 23–1065(A) also informs an understanding of the other relevant provisions of the Workers' Compensation Act. *See, e.g., Carter v. Industrial Comm'n,* 182 Ariz. 128, 130, 893 P.2d 1291, 1293 (1995) ("[A] statute must be viewed as a whole and, where possible, intent given to all its parts."). As a consequence, I also disagree with the majority's interpretation of sections 23–907(B), 23–901(4) and 23–930(B).

Section 23–907(B) provides:

An employee of [an uninsured] employer ... may, in lieu of proceeding against the employer by civil action in court, file his application with the commission for compensation in accordance with the provisions of this chapter, and the commission shall hear and determine the application for compensation in the manner other claims are heard and determined before the commission. The compensation so determined shall be paid from the special fund established by § 23–1065 to the person entitled thereto after a finding and award for benefits has been issued and becomes final.

As defined in section 23–901(4), "compensation" means "the compensation and benefits provided by this chapter." The majority adopts Leanza's contention that these provisions, and more specifically the phrase "compensation and benefits," should be broadly construed. I cannot agree. As stated above, section 23–1065(A) unambiguously sets forth the basis for making payments to injured employees from the Special Fund; neither a broad nor, as advocated by the Special Fund, strict interpretation of sections 23–907(B) or 23–901(4) is necessary or required. *See, e.g., Mail Boxes,* 181 Ariz. at 121, 888 P.2d at 779 ("Where language is unambiguous, it is normally conclusive, absent a clearly expressed legislative intent to the contrary."). In neither statute is a legislative intent to include "benefit penalties" under section 23–930(B) as "compensation and benefits" either "clearly expressed" or implied.

Even an examination of section 23–930(B) provides little, if any, support for the position taken by Leanza and the majority. That section provides:

If the commission finds that unfair claim processing or bad faith has occurred in the handling of a particular claim, it shall award the claimant, in addition to any benefits it finds are due and owing, a benefit penalty of twenty-five per cent of the benefit amount ordered to be paid or five hundred dollars, whichever is more.

The majority finds "it significant that the legislature used the word 'benefit' in conjunction with the word 'penalty' " and, as a result, presumes that the legislature "intended the penalty to be part of the benefit and thus fall within the definition of compensation." In light of our duty to give words of a statute their ordinary meaning when there is no contextual need to do otherwise, *see* A.R.S. § 1–213; *Mail Boxes,* 181 Ariz. at 121, 888 P.2d at 779; *Martinez v. Industrial Comm'n,* 175 Ariz. 319, 322, 856 P.2d 1197, 1200 (App. 1993), the majority's conclusion is not supportable.

Although the Workers' Compensation Act does not define the terms "benefit" and "penalty," definitions are easily found. For example, Webster's Ninth New Collegiate Dictionary 144, 869 (1987), defines "benefit" as "financial help in time of sickness, old age, or unemployment," and "penalty" as "the suffering in person, rights, or property that is annexed by law or judicial decision to the commission of a crime or public offense." Black's Law Dictionary 158, 1133 (6th ed. 1990), respectively defines the terms as "[f]inancial assistance received in time of sickness, disability, unemployment, etc. either from insurance or public programs such as social security" and "[a]n elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment."

Certainly, there is no quarrel that Leanza would benefit from a payment of $500. That

said, the majority's emphasis on the word "benefit" ignores the crucial distinction between statutes intended to "benefit" an injured employee and, as with section 23–930, statutes intended to punish those who act in bad faith. The wording of the statute's subsections makes clear the intent of the section to punish, as stated in subsection (A), "unfair claim processing or bad faith by an employer, self-insured employer, insurance carrier or claims processing representative." In this penal context, the word "benefit" is more logically read as modifying the word "penalty," not, as the majority and Leanza propound, the reverse. By the majority's reasoning, the word "penalty" is rendered superfluous, a consequence proscribed by well-established rules of statutory construction. *E.g., Fremont Indem. Co. v. Industrial Comm'n,* 182 Ariz. 405, 408, 897 P.2d 707, 710 (App.1995) (court must give meaning to each clause and word so as to avoid rendering any part of the statute superfluous) (*citing Devenir Assoc. v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991)).

Interpreting section 23–930(B) in this fashion also comports with the fact that, at least on appeal, there is no claim that the Special Fund itself engaged in bad faith.[2] Because the Special Fund did not commit bad faith, there is no purpose in assessing the "benefit penalty" against it. This lack of justification for making the Special Fund pay the "benefit penalty" also undermines the majority's adoption of the reasoning in *Flores v. Workmen's Compensation Appeals Board,* 11 Cal.3d 171, 113 Cal.Rptr. 217, 520 P.2d 1033 (1974) (*superseded by statute,* 1976). Indeed, the California legislature's swift nullification of the *Flores* decision suggests what I believe is the more prudent course: Let the Arizona legislature decide whether to amend the Workers' Compensation Act to authorize the Special Fund to pay "benefit penalties" in cases when uninsured employers act in bad faith.

Finally, because I do not believe that the benefit penalty is part of the "compensation

**2.** Leanza's original claim asserted bad faith by the Special Fund. The record reveals, however, that she no longer pursued this contention after being informed that the Special Fund was not subject to investigation under the statute. As a result, we are not here asked to decide whether a "benefit penalty" can be assessed against the Special Fund because of any bad faith action or lack of action on its part.

and benefits" which the Special Fund is obligated to pay to injured employees of uninsured employers, I part with the majority's conclusion that the Special Fund would be statutorily eligible for reimbursement of the payment from the employer under section 23–907(C). There is absolutely nothing contradictory about opposing payment of "benefit penalties" under section 23–930(B) because they are unjustified and beyond the statutory scope of the Special Fund's authority, and accepting penalty payments into the Special Fund under section 23–930(C).[3] The latter is an administrative penalty that forms one of the statutorily accepted funding sources for the Special Fund, *see* section 23–1065(I); the former is not.

Based on the foregoing, I would set aside the ALJ's award directing the Special Fund to pay the $500 benefit penalty.

---

3. Section 23–930(C) provides:

    If the commission finds that an employer, self-insured employer, insurance carrier or claim processing representative has a history or pattern of repeated unfair claim processing practices or bad faith, it may impose a civil penalty of up to one thousand dollars for each violation found. The civil penalty shall be deposited in the special fund.